

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| SHAWN KAFTOUSIAN, | § | No. 08-14-00019-CV |
| Appellant, | § | Appeal from the |
| v. | § | 219th Judicial District Court |
| NADIA REZAEIPANAH, | § | of Collins County, Texas |
| Appellee. | § | (TC# 219-55034-2011) |
| | § | |

**O P I N I O N[1]**

Shawn Kaftousian appeals the portion of the divorce decree dividing his and Nadia Rezaeipanah's marital estate. In two issues, he contends that the trial court abused its discretion in dividing the marital estate disproportionately and that the evidence is legally and factually insufficient to support certain findings of fact and conclusions of law related to the division of the marital estate. We reverse and remand.

**FACTUAL AND PROCEDURAL BACKGROUND**

Shawn and Nadia were married in October 1997, and their daughter, Kiana, was born approximately six years later. In October 2011, Nadia filed for divorce on grounds of insupportability. She sought the division of the marital estate in a "just and right" manner and her

---

[1] This case was transferred to this Court from the Fifth Court of Appeals pursuant to an order issued by the Supreme Court of Texas. *See* TEX.GOV'T CODE ANN. § 73.001 (West 2013).

appointment as Kiana's joint managing conservator with the exclusive right to designate Kiana's primary residence.[2]  After Shawn answered, the parties entered into a Rule 11 agreement in April 2012.

The agreement required, *inter alia*, Shawn to vacate the parties' home by June 1, 2012 and Nadia to assume the mortgage and utility payments beginning May 1, 2012.  Although Nadia complied with these terms, Shawn did not, prompting Nadia to move for enforcement in February 2013.  Shawn moved out when he was served with the motion, which was subsequently denied without explanation.

In September and October 2013, the case proceeded to a bench trial, at which Nadia and Shawn each testified to the composition of the marital estate and its proposed division.  Nadia testified that, to her knowledge, the marital estate consisted of the parties' home, a bank account in her and her parents' names, and her credit card account.  According to Nadia, the home was valued at $172,074.00 and was encumbered by two separate mortgages totaling $133,402.00.  Shawn testified that the marital estate consisted of the parties' home and their two vehicles.  Shawn also indicated that he had accumulated debt during the marriage as a result of borrowing money from credit cards to pay the mortgages until Nadia took over in May 2012.  Shawn, unlike Nadia, did not offer any evidence of the value of the marital assets and debts identified by him.

Although both Nadia and Shawn requested that the marital estate be split "fifty-fifty," each sough different relief regarding their home.  Shawn wanted the home sold upon divorce and the proceeds divided equally.  Nadia, on the other hand, did not want the house sold.  Instead, she wanted it awarded to her so that she and Kiana could continue residing in it until Kiana's

---

[2] Shawn filed a counter-petition for divorce.  Like Nadia, he sought his appointment as Kiana's primary joint managing conservator and the "just and right" division of the marital estate.

2

eighteenth birthday, which was eight years away. According to Nadia, it would be financially advantageous for her to stay in the home during those eight years and refinance it in her name—the deed and mortgages were in Shawn's name—because the mortgage payment would be less than the prevailing rent in the area. Nadia would then sell the home and provide Shawn with his share of the equity.

Following the bench trial, the trial court issued a memorandum of its decision. With regard to the marital estate, the trial court ruled:

a. Cars-Each party gets the cars currently in their possession and the debt associated therewith.

b. Martial residence.- Mother is awarded the martial residence.

c. All other property/debt is to be divided 50/50.

Dissatisfied with Nadia's proposed divorce decree, Shawn lodged objections to it and moved to admit additional evidence regarding the community debt as of the date of divorce. That additional evidence consisted of three credit card statements, two of which were addressed to Shawn. Those two statements revealed that Shawn owed approximately $19,500. Concurrently, Shawn moved for reconsideration, arguing that it was manifestly unjust to award the home to Nadia. He also requested that he be allowed to submit additional evidence showing the payoff amounts for the two mortgages as of October 2013. That additional evidence consisted of two mortgage statements addressed to Shawn. These statements revealed that the combined balance of the mortgages was approximately $133,000.

The trial court was not swayed. In the final divorce decree, the trial court stated that it granted the divorce on the grounds of insupportability and that it divided the estate in a "just and right" manner. Nadia was awarded the parties' home, her car, her personal possessions, and her

3

financial accounts, and she was ordered to assume the mortgage on the home and the note on her car. Shawn too received his car, his personal possessions, and his financial accounts. He was likewise ordered to assume the note on his car. The decree did not identify any additional debt, including credit card debt, nor did it require the parties to pay one half of each other's debt. Each party was ordered to pay his or her legal fees.

Shawn requested, and the trial court issued, findings of fact and conclusions of law. The trial court found, among other matters, that: (1) the home and the two cars were the only community property; (2) the mortgages and car notes were the only community debts; (3) Shawn "presented no evidence at trial of any credit card debt[;]" and (4) Nadia "accrued reasonable and necessary attorney fees and costs in the amount of $13,083.00[.]" Especially relevant here, the court concluded that "[t]he division of property and debt is a just and right division of property." As requested by Shawn, the trial court also formally ruled on his pending motions, denying them without explanation.

## DIVISION OF MARITAL ESTATE

In his first issue, Kaftousian claims that the trial court's division of the marital estate was manifestly unjust because it awarded a disproportionate share of the marital estate to Nadia without a reasonable basis for doing so. We agree.

### *Standard of Review*

We review a trial court's division of marital property in a divorce proceeding for an abuse of discretion. *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981). A trial court enjoys wide latitude in dividing the marital estate, and we presume that the trial court properly exercised its discretion in reaching its decision. *Id*. at 698-700. Accordingly, we will not overturn that

4

decision unless the complaining party demonstrates that it was so unjust and unfair as to constitute an abuse of discretion. *Id*. at 698, 700; *Mann v. Mann*, 607 S.W.2d 243, 245 (Tex. 1980).

### *Applicable Law*

A trial court is required to divide the marital estate in a manner that it deems "just and right." TEX.FAM.CODE ANN. § 7.001 (West 2006). Although a trial court does not have to divide the marital estate equally, it must do so equitably. *Murff*; 615 S.W.2d at 699; *O'Carolan v. Hopper*, 71 S.W.3d 529, 532 (Tex.App.--Austin 2002, no pet.). If a trial court chooses to divide the marital estate unequally, there must be some reasonable basis for doing so. *O'Carolan*, 71 S.W.3d at 532. In deciding whether a reasonable basis exists for an unequal division of the marital estate, a trial court may consider many factors, including: (1) the spouses' capacities and abilities; (2) benefits that the party not at fault would have derived from the continuation of the marriage; (3) business opportunities; (4) relative physical conditions; (5) relative financial conditions; (6) disparity of ages; (7) size of separate estates; (8) the nature of the property; and (9) disparity of income or earning capacity. *Murff*, 615 S.W.2d at 699.

### *Discussion*

The trial court had no reasonable basis for dividing the community estate disproportionately in Nadia's favor.

As found by the trial court, the community estate consisted of the couples' home, their two cars, the two home mortgages, and the two car notes.[3] Because the value of the two cars and the

---

[3] Shawn does not challenge these specific findings, nor can we conclude that they are not supported by the record. He does, however, complain that the trial court failed to comply with Section 6.711 of the Texas Family Code by omitting from its findings of fact and conclusions of law evidentiary findings regarding the value of all the assets and debts of the community estate. *See* TEX.FAM.CODE ANN. § 6.711(a)(West 2006)(in a suit for dissolution of marriage, *on request by a party*, the trial court shall state in writing its findings of fact and conclusions of law concerning: (1) the characterization of each party's assets, liabilities, claims, and offsets on which disputed evidence has been presented; and (2) the value or amount of the community estate's assets, liabilities, claims, and offsets *on which*

amount of their corresponding notes were unknown, the net value of the community estate corresponded to the equity in the couples' home. Thus, the trial court's decision to award the marital residence to Nadia resulted in her receiving an asset worth $38,672.00 and 100 percent of the net distribution of the community estate.

But the record does not justify awarding 100 percent of the net community estate to Nadia. First, the parties had unequal financial conditions and earning abilities. Nadia was employed, earning approximately $2,300 per month from three hourly-paid positions. As of May 1, 2012, she had been paying the two mortgages on the house, and after all expenses were deducted, she was living month-to-month. Shawn too lived month-to-month after accounting for all his expenses, including child support, car insurance, and health insurance for Kiana. But his earnings abilities and financial condition were markedly different that Nadia's. Shawn earned approximately $1,600 per month from part-time work and unemployment benefits, but he had only $1,235 in unemployment benefits remaining and they accounted for one-fourth of his monthly income.

Second, no party alleged fault, and the trial court granted the divorce on no-fault grounds—insupportability. Third, the parties' ages were roughly the same. Shawn was two years older than Nadia. Fourth, there was no evidence that Nadia had health problems. At trial, she insisted that she had "no mental health concerns" despite the suggestion in the social study that she obtain "therapy and stuff like that." Fifth, there was no evidence that Shawn had a separate

---

disputed evidence has been presented). [Emphasis added]. Specifically, Shawn asserts in his second issue that there are "no findings regarding the amounts of the parties' debts or each party's property in his or her possession." But Shawn's complaint is without merit for several reasons. First, he waived it by failing to request that the trial court make the findings required by Section 6.711. Second, as he acknowledges, "[n]o other testimony regarding value(s) of property or amounts of debt was offered."

estate, much less a sizable one. Sixth, there was no evidence that Shawn had any business opportunities, much less superior ones.

Seventh, the nature of the marital estate did not compel an unequal distribution in Nadia's favor. The home was the principal asset of the marital estate. At the time of trial, Nadia and Kiana were living in it, and Nadia had been making mortgage payments on it since May 1, 2012. Although Nadia testified that remaining in the house until Kiana graduated from high school in eight years would be in their best interests, practically and financially, there is no evidence that divesting Shawn of his equity in the house was necessary to support Kiana because of her needs. In fact, Nadia testified that she did not want to divest Shawn of his equity.

Nadia argues that Shawn's "costly, intentionally contumacious behavior during the entire course of the litigation" provided the trial court with a reasonable basis for awarding her a disproportionate share of the community estate. In particular, she takes the position that the trial court could have reduced Shawn's portion of the community estate by $13,083.00 to account for the attorney's fees she incurred as a result of Shawn's "refusal to negotiate during a simple divorce proceeding." Nadia also posits that the trial court could have further reduced Shawn's portion of the community estate as an offset for "squat[ing] rent-free in the marital residence for eight months, while [she] worked three jobs to pay the mortgage and utilities without his assistance." We agree that the trial court could have rightly considered Shawn's behavior during the pendency of the divorce, which resulted in protracted litigation and reduced the community assets available for division, in making a just and right division of the property. *See Schlueter v. Schlueter*, 975 S.W.2d 584, 589 (Tex. 1998)(noting that "wasting of community assets" is factor in making just and right division). But an unequal division of the community estate may not be awarded to

7

punish an errant spouse. *Young v. Young*, 609 S.W.2d 758, 762 (Tex. 1980). Here, the trial court made findings regarding attorney's fees but not for the lost rent. "When the trial court provides findings, they form the basis of the judgment and that judgment may not be supported on appeal by a ground of recovery or defense not included in the findings of fact." *Gonzalez v. Razi*, 338 S.W.3d 167, 175 (Tex.App.--Houston [1st Dist.] 2011, pet. denied). Accordingly, the trial court's findings could have supported the reduction of Shawn's portion of the community estate to pay attorney's fees but not for the lost rent. If the equity in the marital home had been divided evenly, Shawn would have been entitled to $19,336.00. Subtracting $13,083.00 from that amount yields $6,253.00. To divest Shawn of this sum without support in the record for doing so is to punish him wrongly.

We conclude that the trial court's division of the marital estate was so unjust and unfair as to constitute an abuse of discretion. Accordingly, we sustain Shawn's first issue. Having done so, we need not address Shawn's remaining argument in his second issue that "the trial court erred in denying his motion(s) to re-open the evidence and allow additional evidence on the parties' property and debt." *See* TEX.R.APP.P. 47.1.

## CONCLUSION

We reverse the portion of the trial court's divorce decree dividing the marital estate and remand this case to the trial court for a new trial on that issue. We affirm the remainder of the divorce decree.

July 17, 2015

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

8