ANN CRAWFORD McCLURE, Chief Justice *243 This appeal arises out of an acrimonious divorce that is now procedurally challenged by a dispute over whether the trial court made findings of fact and conclusions of law. We affirm in part, and reverse and render in part.
FACTUAL SUMMARY
Julie Ann Howe (Wife) filed a petition for divorce from Rusty Wayne Howe (Husband) in November 2014. The couple had been married for eighteen years and had two children, aged 14 and 16, as of the date of divorce. Initial efforts to reconcile failed, and the relationship of the parties became increasingly confrontational. Following a non-jury trial, and relevant here, the decree: (1) appointed the parents joint managing conservators, but gave Wife the exclusive right to determine the primary residence of the children without geographic limitation; (2) ordered Husband to pay child support; (3) ordered Husband to pay spousal maintenance; (4) divided the assets and debts, and according to Husband, gave him little of the former and most of the latter; (5) determined that the proceeds from the sale of the marital residence were Wife's separate property; (6) ordered Husband to pay interim attorney's fees that resulted from an earlier default; (7) assessed the ad litem costs against Husband; and (8) incorporated the standard visitation order. Other than the child support order, Husband attacks each of these rulings. We elaborate on the evidence germane to each ruling in conjunction with each issue below.
PROCEDURAL POSTURE
Our first decision point is whether we are reviewing the trial court's judgment with or without findings of fact and conclusions of law. What should be a straightforward question is not based on the record before us.
Traditional Findings of Fact
A request for findings and conclusions shall be filed within twenty days after the judgment is signed. Rule 296 mandates that the request be specifically entitled "Request for Findings of Fact and Conclusions of Law." TEX.R.CIV.P. 296. The request should be a separate instrument and not coupled with a motion for new trial or a motion to correct or reform the judgment. A litigant who misses the deadline waives the right to complain of the trial court's failure to prepare the findings.
Upon timely demand, the court shall prepare its findings and conclusions and file them within twenty days after a timely request is filed. TEX.R.CIV.P. 297. The court is required to mail a copy to each party. Deadlines for requesting additional or amended findings run from the date the original findings and conclusions are filed, as noted below.
If the trial court fails to submit the findings and conclusions within the 20-day period, the requesting party must call the omission to the attention of the judge within 30 days after filing the original request. Failure to submit a timely reminder waives the right to complain of the court's failure to make findings. Averyt v. Grande, Inc. , 717 S.W.2d 891 (Tex. 1986) ; Employers Mutual Casualty Co. v. Walker , 811 S.W.2d 270 (Tex.App.-Houston [14th Dist.] 1991, writ denied) ;
*244 Saldana v. Saldana , 791 S.W.2d 316, 318 (Tex.App.-Corpus Christi 1990, no writ). Where the reminder is filed, the time for the filing of the court's response is extended to 40 days from the date the original request was filed.
If the court files findings and conclusions, either party has a period of ten days in which to request specified additional or amended findings or conclusions. The court shall file same within ten days after the request, and again, cause a copy to be mailed to each party. No findings or conclusions shall be deemed or presumed by any failure of the court to make additional findings or conclusions. TEX.R.CIV.P. 298.
When a party fails to timely request additional findings and conclusions, it is deemed to have waived the right to complain on appeal of the court's failure to make them. Briargrove Park Property Owners, Inc. v. Riner, 867 S.W.2d 58, 62 (Tex.App.-Texarkana 1993, writ denied) ; Cities Services Co. v. Ellison. 698 S.W.2d 387, 390 (Tex.App.-Houston [14th Dist.] 1985, writ ref'd n.r.e.). Where the original findings omit a finding of a specific ground of recovery which is crucial to the appeal, failure to request an additional finding will constitute waiver. Poulter v. Poulter, 565 S.W.2d 107 (Tex.Civ.App.-Tyler 1978, no writ) (failure to request a specific finding on reimbursement waived any reimbursement complaints on appeal).
The general rule is that the failure of the trial court to file findings of fact constitutes error where the complaining party has complied with the requisite rules to preserve error. Wagner v. Riske, 142 Tex. 337, 342, 178 S.W.2d 117, 119 (1944) ; FDIC v. Morris , 782 S.W.2d 521, 523 (Tex.App.-Dallas 1989, no writ). There is a presumption of harmful error unless the contrary appears on the face of the record. In the Matter of the Marriage of Combs, 958 S.W.2d 848, 851 (Tex.App.-Amarillo 1997, no writ) ; City of Los Fresnos v. Gonzalez, 830 S.W.2d 627 (Tex.App.-Corpus Christi 1992, no writ). Thus, the failure to make findings does not compel reversal if the record before the appellate court affirmatively demonstrates that the complaining party suffered no harm. Las Vegas Pecan & Cattle Co., Inc. v. Zavala County, 682 S.W.2d 254, 256 (Tex. 1984). Where there is only one theory of recovery or defense pled or raised by the evidence, there is no demonstration of injury. Guzman v. Guzman, 827 S.W.2d 445 (Tex.App.-Corpus Christi 1992, writ denied) ; Vickery v. Texas Carpet Co., Inc., 792 S.W.2d 759 (Tex.App.-Houston [14th Dist.] 1990, writ denied). Accord, Landbase, Inc. v. T.E.C., 885 S.W.2d 499, 501-02 (Tex.App.-San Antonio 1994, writ denied) (failure to file findings and conclusions harmless where the basis for the court's ruling was apparent from the record).
The test for determining whether the complainant has suffered harm is whether the circumstances of the case would require an appellant to guess the reason or reasons that the judge has ruled against it. Elizondo v. Gomez, 957 S.W.2d 862 (Tex.App.-San Antonio 1997, writ denied) ; Martinez v. Molinar, 953 S.W.2d 399 (Tex.App.-El Paso 1997, no writ) ; Sheldon Pollack Corp. v. Pioneer Concrete, 765 S.W.2d 843, 845 (Tex.App.-Dallas 1989, writ denied) ; Fraser v. Goldberg, 552 S.W.2d 592, 594 (Tex.Civ.App.-Beaumont 1977, writ ref'd n.r.e.). The issue is whether there are disputed facts to be resolved. FDIC v. Morris, 782 S.W.2d at 523.
With regard to additional findings, the case should not be reversed if most of the additional findings were disposed of directly or indirectly by the original findings and the failure to make the additional findings was not prejudicial to the appellant.
*245 Landscape Design & Const., Inc. v. Harold Thomas Excavating, Inc., 604 S.W.2d 374 (Tex.Civ.App.-Dallas 1980, writ ref'd n.r.e.). Refusal of the court to make a requested finding is reviewable on appeal if error has been preserved. TEX.R.CIV.P. 299.
Where findings of fact are filed by the trial court, they shall form the basis of the judgment upon all grounds of recovery. The judgment may not be supported on appeal by a presumption or finding upon any ground of recovery no element of which has been found by the trial court. When the trial court gives express findings on at least one element of a claim or affirmative defense, but omits other elements, implied findings on the omitted unrequested elements are deemed to have been made in support of the judgment. In other words, if a party secures an express finding on at least one element of an affirmative defense, then deemed findings arise as to the balance of the elements. Lindner v. Hill, 691 S.W.2d 590 (Tex. 1985) ; Dunn v. Southern Farm Bureau Casualty Insurance Co., 991 S.W.2d 467 (Tex.App.-Tyler 1999, pet. denied) ; Sears, Roebuck and Co. v. Nichols, 819 S.W.2d 900 (Tex.App.-Houston [14th Dist.] 1991, writ denied). Where deemed findings arise, it is not an appellee's burden to request further findings or to complain of other findings made. It is the appellant's duty to attack both the express and implied findings.
Statutory Findings of Fact
Findings In Child Support Orders
At the time of the final hearing in this case, the Family Code provided that without regard to TEX.R.CIV.P. 296 through 299, in rendering an order of child support, the court shall make written findings of fact if (1) the party files a written request with the court not later than ten days after the date of the hearing, not after the entry of judgment; (2) the party makes an oral request in open court during the hearing; or (3) the amount of child support ordered by the court varies from the child support guidelines. Act of June 19, 2009, 81st Leg., R.S., ch. 767. § 6, 2009 TEX.GEN.LAWS 1938, 1939-40 (amended 2017)(current version at TEX.FAM.CODE ANN. § 154.130 (West Supp. 2017)).
Findings In Visitation Orders
Without regard to Rules 296 through 299, in all cases in which possession of a child by a parent is contested and the possession of the child varies from the standard possession order, the trial court shall state in the order the specific reasons for the variance from the standard order. Act of April 20, 1995, 74th Leg., R.S., ch. 20 § 1, 1995 TEX.GEN.LAWS 113, 152 (amended 2017) (current version at TEX.FAM.CODE ANN. § 153.258 (West. Supp. 2017)). A written request must be filed with the court not later than ten days after the date of the hearing. An oral request must be made in open court during the hearing.
Findings in Dissolution of Marriage
Section 6.711 of the Family Code provides that in a suit for dissolution of a marriage in which the court has rendered a judgment dividing the estate of the parties, on request by a party, the court shall state in writing its findings of fact and conclusions of law concerning (1) the characterization of each party's assets, liabilities, claims, and offsets on which disputed evidence has been presented; and (2) the value or amount of the community estate's assets, liabilities, claims, and offsets on which disputed evidence has been presented. These findings are controlled by *246 Rule 296, et. seq.[1] TEX.FAM.CODE ANN. § 6.711 (West Supp. 2017).
Methodology of Requesting Findings Below
The final decree was signed on March 2, 2016, at a hearing attended by all parties. Husband made an oral request for findings at the hearing. The parties discussed the timing of the due date, and the trial court invited both parties to submit their proposed findings by a date certain. Wife filed proposed findings, but Husband did not.
On March 22, the 20th day following the signing of the judgment, Husband filed his notice of appeal. On April 1, Husband filed a Notice of Past-Due Findings of Fact and Conclusions of Law, asking the court clerk to call the matter to the trial court's attention. The court coordinator then sent the parties the following email on April 25, 2016:
Judge Eskew has reviewed [Wife's] proposed Findings of Fact and Conclusions Law, and it appears that this is a very lengthy recitation of evidence. After reviewing the Final Decree of Divorce, it appears that the Decree includes the necessary findings and conclusions. Both counsel should reply to the court in writing by 5:00 p.m., Thursday, April 28th regarding your position on this statement. In light of this, either of you may request any additional Findings of Fact and Conclusions of Law. If either of you intends to request any additional findings and conclusions, please inform the Court as soon as possible and file the requested findings no later than May 2, 2016. [Emphasis in original].
An order dated May 5 states that neither party responded to the email and that all necessary findings were contained in the final decree of divorce.
The Family Code allows an oral request for some, but not all of the distinct findings of fact contemplated by the Code. For instance, a trial court is required to make findings of fact upon request for property division orders. TEX.FAM.CODE ANN. § 6.711 (West Supp. 2017). This request must comport with Rule 296. Id. at § 6.711(b) ("A request for findings of fact and conclusions of law under this section must conform to the Texas Rules of Civil Procedure."). Yet in the context of child support, the Family Code expressly allows, "[w]ithout regard to Rules 296 through 299," an oral request to trigger the trial court's duty to make certain designated findings under that provision. Id. at § 154.130. At the time of these proceedings, the Family Code also allowed for oral requests for findings when a trial court made a possession order at variance with the standard order.[2]
Another anomaly here is that the findings are contained within the final divorce decree. Rule 299a expressly forbids findings of fact in a judgment. TEX.R.CIV.P. 299a ("Findings of fact shall not be recited in a judgment. ... [They] shall be filed with the clerk of the court as a document or documents separate and apart from the judgment.").[3] That requirement has significance for the timeline for additional findings.
*247 A party must request additional or amended findings within ten days of the original findings. TEX.R.CIV.P. 298. Under that timeline, any request for additional findings would have been late by the time the trial court sent its email. Nothing in the rule allows the trial court to extend this date, or set a new deadline as occurred here. But neither did Husband raise any of these concerns below. The trial court's email as much as anything sought the parties' position on whether the final decree already contained the necessary findings, and neither party raised any Rule 299a complaint.
Husband now contends the trial court did not make any findings despite being requested to do so, and suggests we should "immediately reverse the trial court's judgment [and] remand" for findings. See e.g. Henry v. Henry , 03-11-00253-CV, 2013 WL 4056221, at *1 (Tex.App.-Austin Aug. 9, 2013, no pet.) (mem. op.)(abating appeal and remanding for findings on valuation of property when no findings were made below); see also Cherne Industries, Inc. v. Magallanes , 763 S.W.2d 768, 772 (Tex. 1989) (failure to file properly requested findings is presumed harmful unless the record affirmatively shows the complaining party suffered no injury).
Conversely, Wife now claims that because no additional findings were made, Husband labors under the onerous burden of a litigant who never timely requested findings. E. g. Point Lookout West, Inc. v. Whorton , 742 S.W.2d 277 (Tex. 1987) ; Rivas v. Rivas , 452 S.W.3d 49, 55-56 (Tex.App.-El Paso 2014, no pet.) (in the absence of findings and conclusions, the judgment of the trial court must be affirmed if any available legal theory finds support in the evidence and the reviewing court presumes the trial court made the necessary findings and conclusions to support a recovery on that theory). She does not complain that the initial request was improper because it was made orally.
Findings contained in a judgment can be given probative value on appeal when the court does not issue any separate conflicting findings of fact and conclusions of law. In re C.A.B. , 289 S.W.3d 874, 881 (Tex.App.-Houston [14th Dist.] 2009, no pet.) ("If, as in this case, the findings contained in the judgment are not supplanted by findings filed separately under Rules 297 and 298, findings improperly included in a judgment still have probative value and are valid as findings."); Bruce v. Bruce , 03-16-00581-CV, 2017 WL 2333298, at *2 (Tex.App.-Austin May 26, 2017, no pet.) (mem. op.)(and cases cited therein).[4] Even though Rule 299a does not permit findings to be contained in the judgment, because no one raised that complaint below, we accept any findings in the judgment as the findings of fact for the purposes of this appeal. See Tate v. Tate , 55 S.W.3d 1, 9 n.4 (Tex.App.-El Paso 2000, no pet.) (findings contained within judgment prepared by party could be considered under waiver analysis).
Moreover, based on the May 5 order, it is a fair assumption that had either one of the parties raised the Rule 299a issue, the trial court would have simply reissued its same findings as contained in the judgment as the findings of the court. Because the trial court invited additional findings, and no one filed any, we apply the rule generally governing an appeal where some findings have been made, but no additional findings were requested.
*248 In that circumstance, any finding of fact omitted by the trial court is presumed, when supported by the evidence, so long as one or more elements in support of any ground of recovery or defense have been found by the trial court. TEX.R.CIV.P. 299. As explained by Justice Christopher:
And when the court's findings of fact include one or more elements of a claim or defense, but omits others, the omitted elements will be presumed (if supported by the evidence) unless a party timely files a request for additional findings of fact asking the court to make findings regarding the omitted elements. It seems counterintuitive that you should ask the court to make a finding against you, but it is necessary in order to attack that element on appeal.
Hon. Tracy Christopher, Findings of Fact and Conclusions of Law-Do I Have to?, 76 The Advoc. (Texas) 44, 46 (2016). Stated otherwise, the failure by a party to request additional amended findings or conclusions waives the party's right to complain on appeal about the presumed finding. Smith v. Smith , 22 S.W.3d 140, 149 (Tex.App.-Houston [14th Dist.] 2000, no pet.) ; Dallas Morning News Co. v. Board of Trustees of Dallas Indep. Sch. Dist., 861 S.W.2d 532, 538 (Tex.App.-Dallas 1993, writ denied). If the trial court's original findings do not include any findings on a ground of recovery or defense, however, then the party relying on the ground of recovery or the defense must request additional findings of fact in proper form or the ground is waived. See Levine v. Maverick County Water Control & Imp. Dist. No. 1 , 884 S.W.2d 790, 796 (Tex.App.-San Antonio 1994, writ denied) ; Sears, Roebuck & Co. v. Nichols, 819 S.W.2d at 907-08.
With these observations, we set forth the "findings" contained in the final divorce decree as to the several issues raised on appeal.
Possession
The couples' two teenage children were the focus of the dispute below. Husband wanted the children to stay with him during the school week and then with the Wife on weekends. Wife wanted the opposite. The trial court made this introductory statement before making detailed orders on possession and management:
The Court, having considered the circumstances of the parents and of the children, finds that the following orders are in the best interest of the children.
The decree then appointed both Husband and Wife as Joint Managing Conservators. Wife was granted the exclusive right to designate the primary residence of the children without regard to geographic location. The final decree also incorporates the "Standard Possession Order". Husband generally had possession of the children on designated weekends, and Thursday evenings, and for an extended period in the summer.
Child Support
Husband was ordered to pay $1,462.35 per month in child support so long as the two children were subject to the order. The monthly amount reduced to $1,169.88 for one child. The decree incorporated these findings:
In accordance with Texas Family Code section 154.130, the Court makes the following findings and conclusions regarding the child support order made in open court in this case on February 17, 2016:
1. The amount of child support ordered by the Court is in accordance with the percentage guidelines.
2. The net resources of [Husband] per month are $5,849.35.
*249 3. The net resources of [Wife] per month are $2,550.00.
4. The percentage applied to the first $8,550 of [Husband's] net resources for child support is 25 percent.
Division of Property
The divorce decree divided the property and debts of the spouse, which we detail below. The division was generally explained by this finding:
The Court finds that the following is a just and right division of the parties' marital estate, having due regard for the rights of each party and the children of the marriage.
The final decree contains no specific findings for the value of community assets awarded to Husband and Wife. It does list most of the balances due for the various debts assigned to Husband and Wife.
Spousal Maintenance
The final decree ordered Husband to pay $1,229.88 per month as maintenance to Wife for two years. The order is explained by this finding:
The Court finds that under the circumstances presented in this case, [Wife] is eligible for maintenance under the provisions of Texas Family Code chapter 8. The Court finds that [Husband's] net income is $6,149.41 per month.
Prior Unpaid Obligations
The final decree recites that Husband had not paid several prior interim awards made by the trial court and these obligations were incorporated into the final decree:
It is FOUND that on December 17, 2014 the Court ordered [Husband] to pay interim attorney's fees of $5,000.00 to [Wife's] attorney.
...
It is FOUND and CONFIRMED that [Husband] failed to pay interim attorney's fees to [Wife's] attorney in the amount of $5,000.00 as of February 17, 2016.
Separate Property
A marital residence was purchased with what both parties agree was an inheritance received by Wife. The property was sold during the pendency of the divorce and the proceeds were deposited into a trust account. The decree awards that sum to Wife with only this explanation:
IT IS ORDERED AND DECREED that the following described property is confirmed as the separate property of [Wife]:
a. $34,800.57 (held in the IOLTA account of [Wife's Attorney] ) from the proceeds from the sale of the residence known as 111 Oak Forest Court, Cedar Creek, Texas 78612.
b. Reimbursement from [Husband] for mortgage payments on 111 Oak Forest Ct, Cedar Creek, Texas 78612 that Husband failed to pay after the Default Temporary Orders were signed on December 17, 2014;
STANDARD OF REVIEW
These findings of fact are reviewable, just like a jury verdict, either for legal or factual sufficiency of the evidence. BMC Software Belgium, N.V. v. Marchand , 83 S.W.3d 789, 794 (Tex. 2002) ; Catalina v. Blasdel , 881 S.W.2d 295, 297 (Tex. 1994). In the unique context of most family law issues, however, an appellant must go one-step further and show that as a result of the challenged factual finding, the trial court's decision on issues of property division, conservatorship, visitation, or child support, was an abuse of discretion. Reyes v. Reyes , 458 S.W.3d 613, 616-17 (Tex.App.-El Paso 2014, no pet.) ;
*250 Rivas , 452 S.W.3d at 54. By way of example, in the child support context, an appellant may challenge the sufficiency of the evidence to support a finding of net resources, a finding of the proven needs of the child, or a finding of a material and substantial change in circumstances. Once we have determined whether sufficient evidence exists, we must then decide whether the trial court appropriately exercised its discretion in applying the child support guidelines to the facts established. Accordingly, we note our standards for reviewing the factual and legal sufficiency of the evidence and the abuse of discretion standard.
In considering a legal sufficiency point, we consider the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it. City of Keller v. Wilson, 168 S.W.3d 802, 810 (Tex. 2005). Even if evidence is undisputed, it is the province of the trier of fact to draw from it whatever inferences it wishes so long as more than one inference is possible. Id. at 821. But if the evidence allows only one inference, neither the trier of fact nor the reviewing court may disregard it. Id. We are also mindful that the trier of fact is the sole judge of the credibility of the witnesses and the weight to give their testimony. Id. at 819. When there is conflicting evidence, it is the province of the trier of fact to resolve such conflicts. Id. at 820. In every circumstance in which a reasonable trier of fact could resolve conflicting evidence either way, the reviewing court must presume it did so in favor of the prevailing party, and disregard the conflicting evidence in its sufficiency review. Id. at 821. If the evidence at trial would enable reasonable and fair-minded people to differ in their conclusions, then the trier of fact must be allowed to do so. Id. at 822. So long as the evidence falls within this zone of reasonable disagreement, we may not substitute our judgment for that of the trier of fact. Id. The ultimate test for legal sufficiency is whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. Id. at 827.
In conducting a traditional factual sufficiency review, we consider all the evidence, including that which tends to prove the existence of a vital fact in addition to evidence that tends to disprove its existence. Bernal v. Chavez , 198 S.W.3d 15, 18 (Tex.App.-El Paso 2006, no pet.). The court's finding of fact must be so against the great weight and preponderance of the evidence as to be manifestly wrong. Id. The trier of fact determines the weight to be given to the testimony and resolves any conflicts in the evidence. Id. at 19.
The term "abuse of discretion" is not susceptible to rigid definition. Reyes , 458 S.W.3d at 616, citing Landon v. Jean-Paul Budinger, Inc., 724 S.W.2d 931, 934 (Tex.App.-Austin 1987, no writ). It describes, however, a trial court that acts arbitrarily, unreasonably, without regard to guiding legal principles, or without supporting evidence. Bocquet v. Herring , 972 S.W.2d 19, 21 (Tex. 1998) ; Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 242 (Tex. 1985). The mere fact that a trial court may decide a matter within its discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred. Southwestern Bell Telephone Co. v. Johnson , 389 S.W.2d 645, 648 (Tex. 1965) ; Jones v. Strayhorn, 159 Tex. 421, 321 S.W.2d 290, 295 (1959). With these standards in mind, we tackle Husband's nine issues.
THE DEFAULTED INTERIM ATTORNEY'S FEES
In his first issue, Husband complains of a portion of the final decree that *251 incorporated an earlier award to Wife of $5,000 in interim attorney's fees. When the divorce was first filed, Wife sought various temporary orders, including an interim fee award, and she set the matter for hearing two days after Husband's scheduled answer date. Husband filed his answer a week late, which allowed Wife to obtain the temporary orders by default, including the interim fee award. Husband sought a new temporary orders hearing, arguing in part that his former attorney had miscalculated the answer date. The trial court never expressly ruled on the motion, but referred the parties to mediation.
At mediation, the parties entered into an agreement that incorporated the handwritten notes of the mediator. The parties direct us to no specific agreement abrogating the $5,000 interim fee award. Several months later, the trial court entered additional temporary orders. Those orders did not specifically address the interim fees, but they did contain the statement that "[a]ll prior orders not in conflict shall remain in full force an[d] effect." At the final hearing, Wife reasserted her right to have the fee order enforced and incorporated into the judgment. Husband did not re-urge his earlier motion to set aside the default order.
Instead, Husband pursues an alternate strategy by claiming that "no record appears to have been taken" at the hearing and therefore no evidence can support the necessity for, or amount of, interim attorney's fees. We perceive two problems with his argument. First, Wife challenges the assertion that no record was taken and nothing in our record affirmatively shows otherwise. Husband's prior lawyer requested that the court reporter transcribe the trial testimony and one post-trial hearing; we can find no specific request for the reporter's record of the default temporary orders hearing. Second, the text of the default order contains a recital that there was a hearing and the trial court heard evidence: "The Court, after examining the record and hearing the evidence and argument of counsel, finds that all necessary prerequisites of the law have been legally satisfied and that the Court has jurisdiction of this case and of all the parties." Husband must present some basis to challenge the recital in the order, but has not done so here. See Bard v. Frank B. Hall & Co. , 767 S.W.2d 839, 845 (Tex.App.-San Antonio 1989, writ denied) (record failed to overcome recital in dismissal order about what transpired at hearing); Adamson v. Blackmar , 546 S.W.2d 698, 700 (Tex.Civ.App.-Austin 1977, no writ) (collecting cases for rule that recital in judgment is presumed true, subject to rebuttal by evidence in record). Because Husband has not demonstrated the absence of a record, or that there was no evidence presented as to the amount of attorney's fees, we overrule Issue One.
JUDICIAL NOTICE OF INVENTORY
In his second issue, Husband claims that the trial court erred by taking judicial notice of the truth of factual assertions made in an inventory in the court's file. The day prior to trial, Wife filed an inventory that detailed the couple's assets and debts, and assigned values to most of the property. She also filed a separate document outlining her proposed division of property and parenting plan. During Wife's testimony, the inventory was marked as an exhibit. Husband objected based on the timeliness of the filing. Wife responded that the inventory did nothing more than summarize the 3000 pages of exchanged documents, and its contents were not a surprise. The trial court overruled Husband's objection, but the inventory was not offered into evidence at that time. Wife then marked and offered her proposed distribution of the property as an *252 exhibit. Over objection, the trial court excluded that as an exhibit, but stated it would "take judicial notice of it in the file and its contents." Later, during cross-examination of the Husband, Wife actually offered the inventory, to which Husband raised a hearsay objection. The inventory was then admitted.
On appeal, Husband argues that the trial court improperly took judicial notice of the contents of the inventory and appraisement, and that it was error to admit it under the hearsay and authentication requirements of the rules of evidence. We dispense with the judicial notice argument because the trial court never took judicial notice of inventory. Rather, the judge took judicial notice of Wife's proposed distribution of property. The proposed distribution is just that-a proposal or a short hand rendition of what Wife might have testified to or what her attorney might have outlined as her position in an opening or closing argument.
Husband next claims that admission of the inventory was error. We review a trial court's rulings on the admission or exclusion of evidence under an abuse of discretion standard. Broders v. Heise , 924 S.W.2d 148, 151-52 (Tex. 1996) ; Sanchez v. Balderrama , 08-15-00088-CV, 546 S.W.3d 230, 234-35, 2017 WL 511887, at *2 (Tex.App.-El Paso Feb. 8, 2017, no pet.).
We dispose of the authentication objection because it was not raised below. To preserve error, the opponent of evidence must make a timely, specific objection and obtain a ruling. TEX.R.APP.P. 33.1 ; TEX.R.EVID. 103(a)(1) ; Service Corporation International v. Guerra, 348 S.W.3d 221, 234 (Tex. 2011). Husband made no objection at trial based on authentication, and consequently, that argument is waived. See Seymour v. Gillespie , 608 S.W.2d 897, 898 (Tex. 1980) (authentication is one of the evidence predicate objections which must be specifically raised); Morales v. Rice , 388 S.W.3d 376, 381 (Tex.App.-El Paso 2012, no pet.) (appellant waived authentication error where it was not raised to trial court); Williams v. County of Dallas, 194 S.W.3d 29, 32 (Tex.App.-Dallas 2006, pet. denied) (same).
The remaining issue of hearsay is a bit more substantial. The inventory itself is hearsay. It is a statement made by a declarant other than while testifying at the trial, which was offered for the truth of the matter asserted. TEX.R.EVID. 801(d)(1)(2). Nonetheless, the trial court would not have abused its discretion in admitting the exhibit under a hearsay exception. Rule 803(15) establishes a hearsay exception for:
A statement contained in a document that purports to establish or affect an interest in property if the matter stated was relevant to the document's purpose-unless later dealings with the property are inconsistent with the truth of the statement or the purport of the document.
TEX.R.EVID. 803(15). More importantly, the Family Code authorizes the trial court to enter temporary orders requiring the parties to file a "sworn inventory and appraisement of the real and personal property owned or claimed by the parties and specifying the form, manner, and substance of the inventory and appraisal and list of debts and liabilities...." TEX.FAM.CODE ANN. § 6.502(a)(1). Such is common practice around the state. Indeed, Husband does not challenge the claim that the values reflected in the inventory form were derived from documents he produced in discovery. Nor does he offer any basis to suggest the items listed and their values were incorrect. We overrule Issue Two.
DIVISION OF COMMUNITY ESTATE
Husband's third issue complains of the property division, and particularly *253 the absence of fact findings for all of the assets awarded and liabilities assigned to the spouses. His fourth issue complains of the disproportionate division.
The Family Code requires the marital estate be divided in a manner that it is "just and right." TEX.FAM.CODE ANN. § 7.001 (West 2006). Although a trial court does not have to divide the marital estate equally, it must do so equitably. Murff v. Murff , 615 S.W.2d 696, 698-99 (Tex. 1981) ; O'Carolan v. Hopper, 71 S.W.3d 529, 532 (Tex.App.-Austin 2002, no pet.). If a trial court chooses to divide the marital estate unequally, there must be some reasonable basis for doing so. O'Carolan, 71 S.W.3d at 532. In deciding whether a reasonable basis exists for an unequal division of the marital estate, a trial court may consider many factors, commonly called the Murff factors. including: (1) the spouses' capacities and abilities; (2) benefits that the party not at fault would have derived from the continuation of the marriage; (3) business opportunities; (4) relative physical conditions; (5) relative financial conditions; (6) disparity of ages; (7) size of separate estates; (8) the nature of the property; and (9) disparity of income or earning capacity. Murff, 615 S.W.2d at 699 ; Kaftousian v. Rezaeipanah , 511 S.W.3d 618, 622 (Tex.App.-El Paso 2015, no pet.).
In determining whether a trial court abuses its discretion in making a just and right division of the community estate, it is important to "quantify the size of the community pie" so the reviewing court can know "just how large a slice each spouse was served." In re Moschopoulos , 08-13-00026-CV, --- S.W.3d ----, ----, 2014 WL 5798278, at *3 (Tex.App.-El Paso Oct. 31, 2014, no pet.), citing Roberts v. Roberts, 999 S.W.2d 424, 435 (Tex.App.-El Paso 1999, no writ). Accordingly, an appellant is entitled to findings on characterization and valuation when error is preserved. Roberts, 999 S.W.2d at 435. The Family Code makes clear, however, that while a party is entitled to findings concerning the characterization of each party's assets and liabilities, and the valuation of community assets and liabilities, a request must conform to the Rules of Civil Procedure (i.e. Rule 296-299a). TEX.FAM.CODE ANN. § 6.711. These findings are available pursuant to either statutory or traditional findings of fact.
As we explain above, the final decree contains at least some findings germane to the property division. The court stated that its disposition of the property was "a just and right division of the parties' marital estate, having due regard for the rights of each party and the children of the marriage." Found within the detail of the decree are additional findings for the specific values associated with some, but not all, of the debts assigned to Husband and Wife. The decree also stated the monthly net resources for both Husband and Wife. Each of these are relevant considerations that would factor into the division of the property. See Murff , 615 S.W.2d at 698-99 (earning capacity and business skills parties). Because the trial judge made some findings on this issue, and Husband requested no additional findings, we therefore presume any omitted findings that are supported by the evidence. We overrule Issue Three that faults the trial court for failing to value each of the community assets and liabilities.
In Issue Four, Husband claims the unequal division itself is error. He emphasizes that the trial court awarded 88.6% of the community debts to Husband. He also contends that Wife received the majority of the community assets and was awarded the residual equity in the house as her separate property. We review the trial court's division of marital property for *254 an abuse of discretion. Murff, 615 S.W.2d at 698. A trial court enjoys wide latitude in dividing the marital estate, and we presume that the trial court properly exercised that discretion in reaching its decision. Id. at 698-700. Accordingly, we will not overturn that decision unless the complaining party demonstrates that it was so unjust and unfair as to constitute an abuse of discretion. Id. at 698, 700 ; Mann v. Mann, 607 S.W.2d 243, 245 (Tex. 1980) ; Kaftousian , 511 S.W.3d at 621.
Husband does not attempt to construct a balance sheet showing what net proceeds (considering assets and debts) each spouse received from the community estate. At most, he describes the division of the debts and complains that there was insufficient evidence to describe the assets. Each party in a divorce proceeding has a responsibility to produce evidence of the value of various properties to provide the trial court with a basis upon which to make the division. Reyes , 458 S.W.3d at 620 ; Wallace v. Wallace, 623 S.W.2d 723, 725 (Tex.Civ.App.-Houston [1st Dist.] 1981, writ dism'd). And generally, a party who does not provide the trial court with values for the property cannot complain on appeal of the trial court's lack of information in dividing the community estate. Wheeling v. Wheeling , 08-15-00064-CV, 546 S.W.3d 216, 227-26, 2017 WL 192912, at *8 (Tex.App.-El Paso Jan. 18, 2017, no pet.) (and cases collected therein). At trial, Husband provided few values for any of the assets. Indeed, through counsel and his own testimony, he claimed the property division was unimportant. Rather, he identified the possession and visitation of the children as the focus of the hearing.[5]
The final decree described some of the specific property that each spouse received. Comparing those items with the listed values for those items as contained on Wife's inventory, it appears that Husband received some $34,200 in community assets and Wife received $25,340.[6] Husband assumed over $52,000 in debts and Wife assumed about $4,300 in debts.[7] The most significant asset of the community, however, was an air-conditioning maintenance business that was established as subchapter S Corporation. Husband held the license for the business and had the customer contacts. Before their separation, Wife worked as the bookkeeper and owned 51% of the company shares. Wife showed that following their separation, Husband made distributions to himself as the 49% shareholder, but he made no distributions to her. He agreed, however, that any distributions to shareholders must be proportionate. Wife testified that as of October 2015, these distributions totaled $218,766.79 of which she received nothing.
*255 Wife also reviewed the books and records and developed a spreadsheet that documented various questionable transfers, including personal expenses, cash withdrawals, and payments for Husband's rent at his new residence, child support payments, trips, and airline tickets. She calculated that the transfers to Husband's checking account totaled $96,556.31. Including online transfers, purchase of food, and miscellaneous expenses, Husband had extracted $143,189.46 from the business during the same period. Wife claimed that the company's shares should be valued between $400,000 to $600,000, and that Husband should be required to buy her shares for half that amount.
The trial court, noting the improper distributions, arrived at a different solution. It awarded Husband 51% of the Wife's community property interest in her shares, and awarded the Wife 49% of the Husband's community interest in his shares. The result gave each spouse 50% of the company shares, and effectively divested the Wife of her controlling interest in the company. The decree therefore awarded Husband an intangible item of considerable worth that he does not account for in his argument: he was no longer exposed to a hostile shareholder with a controlling interest in the company. Nor does Husband's argument account for the unequal shareholder distributions or direct payments from the business. Based on the record before us, we cannot conclude the trial court abused its discretion in making an unequal division of the community assets and debts. We overrule Issue Four.
AWARD OF HOUSE PROCEEDS
Husband's fifth issue complains that the trial court erred when it awarded the net sales proceeds of the marital residence to Wife as her separate property. He claimed in both the trial court and now on appeal that Wife did not overcome the presumption that the house became community property.
All property on hand at the dissolution of marriage is presumed to be community property. TEX.FAM.CODE ANN. § 3.003(a) (West 2006); Tate v. Tate , 55 S.W.3d 1, 4 (Tex.App.-El Paso 2000, no pet.). That presumption is rebuttable, however, requiring a spouse claiming assets as separate property to establish their separate character by clear and convincing evidence. TEX.FAM.CODE ANN. § 3.003(b). Property owned before marriage, or acquired during marriage by gift, devise or descent, is separate property. Id. at § 3.002. Where an asset is purchased during marriage with monies traceable to a spouse's separate estate, the asset may appropriately be characterized as separate property. Rivas , 452 S.W.3d at 54 ; Pace v. Pace , 160 S.W.3d 706, 711 (Tex.App.-Dallas 2005, pet. denied). Community property consists of all property, other than separate property, acquired by either spouse during marriage. TEX.FAM.CODE ANN. § 3.002.
The house was purchased in 2007 for $147,000 and paid for in full with money Wife inherited from her father. Later, the couple took out two home equity loans secured by the house. One loan was used to pay community debts, make improvements to the residence, and to invest in the couple's business. The other was used to pay the taxes on the house. The house was sold shortly after Husband and Wife separated for $177,000. After paying off the mortgages, the sale netted $34,800.57. Those proceeds were held in trust pending trial. It is clear from the record that there was considerable confusion as to characterization of the home. Wife claimed that the house was separate property. She alternatively sought reimbursement for the separate property funds that she used to purchase *256 the house. Husband argued that the house "became" community property when the home equity loans were acquired. The trial court quickly dispensed with this erroneous position. Community indebtedness secured by separate property do not convert separate property to community property. Husband made no argument that the Wife had "gifted" a portion of the home to him when the deed was purportedly taken in joint names,[8] and again the trial court correctly advised counsel that had a gift occurred, the home would not be community property; a one-half interest would belong to the separate estate of each spouse. Simply stated, the home could never have been community property. The community estate may have had a claim for reimbursement, but Husband did not opt for that remedy. And he admitted at trial that the home was fully purchased with Wife's inheritance. We overrule Issue Five.
SPOUSAL MAINTENANCE
Husband's sixth issue complains of the award of spousal maintenance. The final decree required Husband to pay $1,229.88 per month for two years. The trial court made at least one finding germane to spousal maintenance, determining that the Husband's "net income is $6,149.41 per month." We therefore presume any needed additional findings if supported by the evidence. The gist of Husband's argument is that no evidence was introduced to show that Wife lacks the ability to earn sufficient income to provide for her minimum reasonable needs, which is one of the necessary elements of the claim.
Spousal maintenance is an "award ... of periodic payments from the future income of one spouse for the support of the other spouse." TEX.FAM.CODE ANN. § 8.001(1). The purpose of spousal maintenance is to provide temporary and rehabilitative support for a spouse whose ability to support himself or herself has eroded over time while engaged in homemaking activities and whose capital assets are insufficient to provide support. O'Carolan v. Hopper, 71 S.W.3d 529, 533 (Tex.App.-Austin 2002, no pet.). A trial court may award spousal maintenance only if the party seeking maintenance meets the statutory eligibility requirements under Section 8.051 of the Family Code. Relevant here, those predicates required Wife to show she would lack sufficient property, including her own separate property, to provide for her "minimum reasonable needs." TEX.FAM.CODE ANN. § 8.051. The term "minimum reasonable needs" is not defined in the Family Code. See Cooper v. Cooper , 176 S.W.3d 62, 64 (Tex.App.-Houston [1st Dist.] 2004, no pet.). A trial court determines whether a party's minimum reasonable needs are met on a fact-specific, individualized, case-by-case basis. See Amos v. Amos , 79 S.W.3d 747, 749 (Tex.App.-Corpus Christi 2002, no pet.).
Once a court determines that a spouse is eligible for maintenance, the "nature, duration and manner" of the period payments is governed by a number of other relevant factors," including the age, employment history, earning ability, and physical and emotional condition of the spouse seeking maintenance. TEX.FAM.CODE ANN. at § 8.052 (West Supp. 2017).[9]
*257 The Family Code also presumes that spousal maintenance is not warranted, unless the spouse requesting it has exercised diligence in seeking suitable employment or developing the necessary skills to become self-supporting during the period of separation or the time the divorce is pending. Id. at § 8.053(a); Chafino v. Chafino , 228 S.W.3d 467, 475 (Tex.App.-El Paso 2007, no pet.).
Husband held the appropriate license and had all the customer contact for the air-conditioning business. Wife was the bookkeeper. Following their separation, she moved out of the marital home and into an apartment with her mother. The two children came with her. The rent for the apartment was $1,480 a month; her mother helped with rent but the mother's contribution was not developed in the record. Wife obtained another bookkeeping job that paid her $2,550 per month after deductions. Wife first defends the trial court's decision through the realities of what happened when she did not receive spousal maintenance. Husband was ordered to pay interim spousal of maintenance of $675 per month. He made only a partial payment in October 2015, and had not paid anything from November 2015 until the date of trial in February 2016. During that period, Wife testified that things had "been really tight" and the phone service was cut off for a time.
Otherwise, our record is devoid of information about whether Wife lacked minimal reasonable needs without spousal support. There was no development of her monthly fixed and variable expenses. She testified that she got help from others, but did not say what. Wife's net monthly income after taxes is $2,550.00. Child support payments under the final decree total $1,462.00. If the trial court considered the addition of Wife's separate property, as the Family Code requires, the $34,800.57 from the house sale, divided over the same twenty-four month time-period as the spousal support payments, nets Wife another $1,450 per month. These three sources of income total $5,512.00 per month. Adding the spousal support to that sum would provide Wife more in monthly resources as a single woman than she shared as community property while married ($6,741 versus $6,149.41).
Wife also points us to several bad acts of Husband that can be considered under Section 8.052. Those factors, however, apply only once the trial court had determined that a spouse is eligible for spousal support. TEX.FAM.CODE ANN. § 8.052. Our problem with this record is the lack of any development of the Wife's minimal reasonable needs, which is a predicate before any of the matters under Section 8.052 come into play. Based on the sparse testimony of the minimal reasonable needs for the Wife, we conclude that the trial court abused its discretion in awarding spousal support from the date of the divorce decree.
We sustain Issue Six and reform the final divorce decree to delete the award of spousal maintenance from the date of the final decree forward. Because our analysis considers the separate property awarded to Wife as of the date of the decree, we do not disturb the judgment for unpaid spousal support that accrued up to the date of the final decree.
AWARD OF GUARDIAN AD LITEM FEES
Husband's seventh issue complains that the trial court assessed the ad litem fees against him without making a finding that it was in the best interest of the children. We overrule the issue because Husband never complained about the allocation of the fee below, either at the hearing when the final decree was *258 signed, or by post judgment motion. The trial court had actually entered an interim order in April 2015 that appointed the guardian ad litem and ordered the cost to be paid for by Husband. Husband points to no place in the record where he ever complained of that order. Accordingly, the issue is not preserved for review. See Simon v. York Crane & Rigging Co., Inc. , 739 S.W.2d 793, 795 (Tex. 1987) (holding defendant waived objection to ad litem fee by failing to object at fee hearing, and then failing to make record of new trial hearing that did raise issue). We overrule Issue Seven.
RIGHT TO DESIGNATE PRIMARY RESIDENCE AND POSSESSION ORDER
In his eighth issue, Husband contends the trial court abused its discretion by disregarding the periods of possession recommended by the guardian ad litem in favor of that preferred by the children. Over the course of their separation, the parents tried different living arrangements with the children. By the time of trial, both parents essentially agreed that on joint managing conservatorship, but each wanted to designate the primary residence. The trial court took testimony on the issue from both parents, the guardian ad litem, and interviewed the children in chambers. The final decree names Wife the joint managing conservator with the right to designate the primary residence without geographic limitation.
Much of the trial testimony pertained to education and where the children should go to school. At the time of the final hearing, the 16-year-old was living with Wife and was enrolled as a junior at Bastrop High School. Some testimony, if credited by the trial judge, established that she was doing better academically at this school than at Cedar Creek High School where she went while she lived with Husband. The child desired to stay at Bastrop High School. The 14-year-old initially attended middle school in Cedar Creek. After having problems there, a mediated agreement allowed the younger daughter to be home schooled for the Fall semester of 2015 while residing with Wife. The home schooling option apparently failed and the ad litem claimed the girl just stayed in a bedroom logged onto the internet. A subsequent interim order directed that she would be re-enrolled into the Cedar Creek school absent an agreement of both parents in writing. But Wife unilaterally enrolled her in a school in Austin for the Spring semester of 2016, which was apparently close to Wife's work location.
The younger daughter has issues with anxiety attacks, depression, and social phobias. She was on medications, and at one time was admitted to a facility under the care of a psychiatrist. The evidence conflicted over how well she was doing in the Austin school setting. She had only been in that school for a month and half by the time of trial. Nonetheless, there was some testimony that Austin schools might be better suited to handle her unique needs. While the ad litem did not agree with the decision to move the child to the Austin school, she conceded it would not be good to move the child back to Cedar Creek.
The trial judge was also confronted with conflicting testimony about the spouses parenting abilities. Wife claimed that Husband had anger control issues and overreacted in the presence of the children. Husband contended that he was the stable influence in the family and that without the structure he provided, the children were regressing.
The court-appointed attorney ad litem supported Husband's parenting plan. The ad litem's rationale was multi-fold. First, the ad litem did not trust Wife based on *259 specific instances where Wife had told the ad litem one thing that either could not be verified or appeared to be affirmatively untrue. Second, Wife had failed to abide by several of the ad litem's recommendations that had been incorporated into mediated settlement agreements, and had made several unilateral parenting decisions without Husband's input. Additionally, the ad litem believed that the children did better in the periods of time when they stayed with Husband, and poorer when they stayed with Wife. In her words, "[t]hey just don't do well with their mom, she can't control them." The ad litem also believed that the Wife was attempting to alienate the children from their father. She acknowledged some of that same behavior with Husband as well. The ad litem had a good relationship with the older child, but the younger child was openly hostile.
Over the course of the litigation, both children expressed different preferences for living arrangements. By the time of the hearing, however, both wanted to live with Wife. They were interviewed by the trial judge in chambers. With Husband's agreement, no record of the interview was taken, but there was no dispute that by the time of the final hearing, both children desired to live with Wife.
The best interest of the child is always the primary consideration in determining issues of conservatorship and possession. TEX.FAM.CODE ANN. § 153.002 (West 2014). Courts may use the non-exhaustive list of Holley factors to determine the child's best interest. Holley v. Adams , 544 S.W.2d 367, 371-72 (Tex. 1976) ; see also In re Doe 2 , 19 S.W.3d 278, 300 n.20 (Tex. 2000) (recognizing that intermediate courts employ the Holley factors to ascertain best interest in conservatorship cases); Long v. Long , 144 S.W.3d 64, 68 (Tex.App.-El Paso 2004, no pet.) (applying Holley factors). Those factors include, but are not limited to: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. Holley , 544 S.W.2d at 371-72. These considerations are not exhaustive. In re C.H. , 89 S.W.3d 17, 27 (Tex. 2002) ; Holley, 544 S.W.2d at 371-72.
Husband's argument fails largely because of our standard of review. For each of the Holley factors that would be relevant to this dispute, the trial court was confronted with conflicting testimony. For instance, the children had expressed different preferences on where to live, but as the date of the hearing, they both desired to live with their mother. While Husband elicited evidence that the younger child was regressing in Wife's care, the record also contains evidence that the child was doing better in the new setting of the Austin school. As the fact finder, the trial court necessarily had to determine credibility, and assign the relative weight to each witnesses' testimony, including that of the ad litem. Husband has not convinced us that the presumed findings supporting the trial court's decision were so against the great weight and preponderance of the evidence as to be manifestly wrong.
The trial court is vested with broad discretion in designating a child's primary residence.
*260 Gardner v. Gardner, 229 S.W.3d 747, 753-54 (Tex.App.-San Antonio 2007, no pet.) (no abuse of discretion to award husband right to determine child's primary residence); Long, 144 S.W.3d at 70-71 (affirming trial court's order awarding father right to establish primary residence of children without regard to geographic location). After reviewing the record, we conclude the trial court had sufficient evidence upon which to exercise its discretion and, based on the evidence concerning all the relevant circumstances, did not abuse that discretion in designating Wife as the managing conservator with the exclusive right to designate the primary residence without geographic limitation. We overrule Issue Eight.
ELECTION OF THE EXPANDED POSSESSION PERIOD
In his final issue, Husband complains that the trial court did not grant him expanded possession times provided for in Section 153.317. Under the standard possession order as entered, Wife must surrender the children to Husband at 6:00 p.m. on designated Fridays, and Husband must then return the children to Wife by 6:00 p.m. on Sunday. This and other specific times for surrendering the children are set by statute, and were incorporated into the final decree (the Standard Possession Order). TEX.FAM.CODE ANN. §§ 153.312, 153.314, and 153.315.
Section 153.317, however, allows a non-primary managing conservator to elect an expanded period of possession. For the weekend periods described above, Husband could pick up the children at the end of the school day on Friday, and deliver them to school on Monday morning. Id. at § 153.317(a)(1)(A)(B). Similarly, for Thursdays, Husband could pick the children up from school and deliver them back to school on Friday morning, rather than be limited to 6:00 p.m. to 8:00 p.m. on Thursday nights. Id. at § 153.317(a)(2). If properly elected, the trial "shall alter the standard possession order" as the alternative beginning and ending possession times "unless the court finds that the election is not in the best interest of the child." Id. at § 153.317(a); Mason-Murphy v. Grabowski , 317 S.W.3d 923, 929 (Tex.App.-Austin 2010, no pet.) ; In re C.A.P., Jr. , 233 S.W.3d 896, 901 (Tex.App.-Fort Worth 2007, no pet.). Husband complains that he made the election and the trial court failed to make any finding that would negate his election.
Wife raises two procedural responses. We need only address the first. Wife argues that Husband's election came too late. Section 153.317 requires the possessory conservator to make the election "before or at the time of the rendition of a possession order." [Emphasis added]. Id. at § 153.317(b). In this case, the trial court apparently discussed its resolution of the various issues with the attorneys on February 17, 2016, following the hearing. The final decree was signed at a hearing on March 2, 2016. The final decree recites that the divorce was "judicially PRONOUNCED AND RENDERED in court at Bastrop, Bastrop County, Texas, on February 17, 2016 and further noted on the court's docket sheet on the same date, but signed on March 2, 2016." Husband did not contest the recitation in the final decree. Nor did he file any post-judgment motion seeking to correct or modify the recitation. Based on the recitation that judgment was rendered on February 17, 2016, the request for the extended visitation period came too late. We overrule Issue Nine.
CONCLUSION
We overrule Issues One, Two, Three, Four, Five, Seven, Eight, and Nine. We sustain Issue Six and render judgment *261 deleting the spousal maintenance from the date of the decree forward.

Many of the provisions cited in this opinion were amended in the 85th Legislature. Act of May 23, 2017, 85th Leg. R.S., ch. 421 (S.B. 1237), 2017 Tex.Sess. Law Serv. 1126, 1130 (West 2017). Those changes took effect September 1, 2017.

Act of April 20, 1995, 74th Leg., R.S., ch. 20 § 1, 1995 Tex.Gen.Laws 113, 152 (amended 2017)(current version at Tex.Fam.Code Ann. § 153.258 (West. Supp. 2017)).

We note, however, that some findings, such as those germane to child support that are statutorily directed can appropriately be contained in the final decree.

Bruce is particularly instructive on this point because this is a transferred case from the Third Court of Appeals and we follow their precedent to the extent it conflicts with our own. Tex.R.App.P. 41.3.

His counsel's opening statement urged: "On the property issues, Your Honor, this man doesn't care about the money. These folks don't have enough money to fight about anyway. In his mind, this is about the children."

Husband received a 60" TV ($1,000), Dell Laptop ($800), master bedroom suite ($2,300), outdoor table and chairs ($100) and a Chevrolet Silverado pickup ($30,000). Wife was awarded a corner cabinet ($300), a Dell desktop computer ($600), a Wells Fargo account ($538.54), a 2006 Chevrolet Silverado ($12,000), a 2009 Jeep ($4,000), and a 2011 travel trailer ($8,900). We note that some of the assets do not have assigned values, and many of the assets with assigned values on the inventory are not specifically referenced in the final decree.

Not all the debts have assigned values, and we have not included the largest debt assigned to Husband, a note on a Harley Davidson motorcycle, because Husband testified that the bike was repossessed, and Wife's inventory claims it had a fair market value in excess of the balance owed.

The deed was not introduced into evidence.

The court's discretion in determining duration of payments is also statutorily limited by Section 8.054 that imposes a maximum time periods based on the duration of the marriage and a further requirement that the trial court "shall limit the duration of a maintenance order to the shortest reasonable period that allows the spouse seeking maintenance to earn sufficient income to provide for the spouse's minimum reasonable needs." Id. at § 8.054(a)(2).